**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL LEONARD, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-2033 |
| | : | |
| SEPTA, | : | |
|     Defendant. | : | |

**January 22, 2021**                                                                                                                                                                                                     **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiff Michael Leonard brings suit against Defendant SEPTA, alleging that SEPTA violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. I exercise federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. SEPTA moves to dismiss Leonard's Complaint. For the below reasons, I will grant SEPTA's motion to dismiss.

**I. BACKGROUND**[1]

Leonard began working for SEPTA almost twenty-five years ago. SEPTA employs Leonard as a mechanic for its buses.

In 2003, Leonard was diagnosed with penile cancer. In 2004, Leonard informed SEPTA via a doctor's note that he was medically restricted from wearing clothing that would be restrictive around his genital area. Leonard's medical restriction did not impair his ability to work as a mechanic for SEPTA until 2016.

In 2016, SEPTA obtained new buses that required an electrical retrofit on the roof of each bus. At the time, Leonard was a first class mechanic. SEPTA had first class mechanics perform

---

[1] All facts are taken from the Complaint unless otherwise noted.

work on the bottom of buses from the ground and work on top of the buses from the roof. When mechanics worked on the top of the buses, they were required to wear harnesses; when they worked on the bottom of the buses, they were not required to wear harnesses.

Leonard reminded SEPTA that he was unable to wear a harness. Director Mike Shivera ordered Leonard to provide SEPTA with a new doctor's note about his medical restriction related to wearing a harness. Leonard gave the new note to his foreman, Joe Miller, who asked if Leonard "really wanted to go through with this." Compl. ¶ 20.

Despite the fact that SEPTA employs many first class mechanics who only perform ground work, SEPTA gave Leonard the following three options: (1) he could wear the harness against doctor's orders when performing work on top of a bus; (2) he could use sick days anytime he was ordered to perform work on top of a bus; or (3) he could take a demotion from a first class mechanic to a third class mechanic and receive a $2.50 per hour salary reduction.

Because Leonard did not want to risk physical harm by wearing the harness and he only had a finite amount of sick days, he was forced to take a demotion to third class mechanic and a pay cut of $2.50 per hour. Leonard has continued to challenge his demotion and salary reduction.

Leonard has faced additional struggles with SEPTA related to his medical condition. "Every time [Leonard] has faced a complication due to his cancer which requires an[] accommodation or time off work, he is harassed by [SEPTA]." Compl. ¶ 32. Leonard "has been harassed in front of coworkers for wearing baggy pants." Compl. ¶ 33. Moreover, Leonard "was forced to self-catheterize, at work, for over a year rather than undergo a surgery that could correct this issue due to [SEPTA's] ongoing harassment and poor behavior every time [Leonard's] condition required surgical intervention." Compl. ¶ 34.

On July 30, 2019, Leonard dual filed a charge of discrimination against SEPTA with the Pennsylvania Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC charge").  Charge of Discrimination, Def.'s Mot. Ex. A.[2]  In his EEOC charge, Leonard recounted his diagnosis of penile cancer and his medical prohibition on wearing restrictive clothing around his genital area.  *Id.*  He stated that in 2016, as a result of his inability to wear a harness, SEPTA demoted him from a first class mechanic to a third class mechanic, which resulted in a $2.50 per hour salary reduction.  *Id.*  Leonard also alleged that he has continued to challenge both his demotion and pay cut.  *Id.*  Leonard checked the box labelled "continuing action" on the EEOC charge, asserting that "[e]ach time [SEPTA] issues [him] a paycheck reflecting the $2.50 per hour pay cut, the 300-day statute of limitations resets."  *Id.*

In the EEOC charge, however, Leonard never mentioned experiencing any sort of harassment as a result of his disability and failed to recount any other negative interactions with SEPTA.  *See id.*

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[2] While a court typically may not consider documents outside the pleadings at the motion to dismiss stage, "a court may consider a document that is 'integral to or explicitly relied upon' in the complaint." *Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Here, the Court will consider Leonard's EEOC charge.  The EEOC charge is integral to the Complaint because Leonard was required to file an EEOC charge in order to exhaust his administrative remedies before bringing suit.  *See, e.g., Lee v. Eddystone Fire & Ambulance*, No. CV 19-3295, 2019 WL 6038535, at *1 n.1 (E.D. Pa. Nov. 13, 2019). Additionally, Leonard relies upon the fact that he has exhausted his administrative remedies with the EEOC in his Complaint. *See* Compl. ¶ 3.  Lastly, neither party objects to the Court's consideration of Leonard's EEOC charge.

to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

**III. DISCUSSION**

Leonard brings two ADA claims against SEPTA: an harassment claim and a failure to accommodate claim. Leonard claims that SEPTA discriminated against him when it engaged in an ongoing pattern of harassment. Leonard also claims that SEPTA failed to accommodate his disability, which resulted in his demotion in 2016. SEPTA argues that Leonard has failed to exhaust his claim of ongoing harassment, and Leonard cannot succeed on his failure to accommodate claim because it is barred by the administrative statute of limitations.

Under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 12117 (providing that the same procedures used to enforce Title VII of the Civil Rights Act of 1964 apply to ADA claims); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." (citing 42 U.S.C. § 2000e–5(e)(1))); *e.g.*, *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 324 (E.D. Pa. 2018) (applying the 300-day limitation period to an ADA claim). "It has been recognized generally that EEOC charges should be liberally construed because they are preferred by laymen and are usually prepared without legal assistance." *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 864 (3d Cir. 1977); *see also E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 300 (3d Cir. 2010). "Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (*quoting Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 294, 398-99 (3d Cir. 1976)). "Because failure to exhaust administrative remedies is an

affirmative defense, the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

**I. Harassment Claim**

Leonard alleges that SEPTA discriminated against him when SEPTA engaged in a pattern of harassment, which included making fun of Leonard for wearing baggy pants, harassing him every time he needed an accommodation of time off work, and forcing him to self-catheterize. SEPTA argues that Leonard has failed to exhaust his harassment claim because Leonard failed to include any mention of harassment in his EEOC charge.

Leonard's EEOC charge focused exclusively on his 2016 demotion and was devoid of any facts that could have been construed as raising a harassment claim. Therefore, his harassment claim was not within the scope of his EEOC charge or the EEOC investigation that was reasonably expected to grow out of the charge of discrimination. Because Leonard failed to include any reference to harassment in his EEOC charge, Leonard failed to exhaust his claim that SEPTA engaged in a pattern of harassment. *See Ocasio v. City of Bethlehem*, No. CIV.A. 08-3737, 2009 WL 37518, at *3 (E.D. Pa. Jan. 7, 2009) (holding that the plaintiff had failed to exhaust his administrative remedies as to his harassment claim because the EEOC charge focused only on a failure to promote); *Hemphill v. Philadelphia Hous. Auth.*, No. CV 16-4551, 2016 WL 6995021, at *3 (E.D. Pa. Nov. 30, 2016) (holding that the plaintiff had failed to exhaust her administrative remedies as to her hostile work environment claim because "there [we]re no facts in her charge that could have been construed as raising a hostile work environment claim that the EEOC would have investigated."). Therefore, I will grant the motion

to dismiss Leonard's claim that SEPTA discriminated against him by engaging in a pattern of harassment.

## II. Failure to Accommodate Claim

Leonard also claims that SEPTA discriminated against him when it failed to accommodate his disability, which resulted in his 2016 demotion. SEPTA argues that Leonard's failure to accommodate claim must be dismissed as time barred because Leonard was demoted in 2016 and waited until July 30, 2019 to file his EEOC charge; thus, he did not file a charge of discrimination within 300 days of his demotion. Leonard counters that, even though he failed to file his EEOC charge within 300 days of his demotion, his claim is timely based on the continuing violations doctrine and the Lilly Ledbetter Fair Pay Act of 2009. Alternatively, Leonard argues that even if he did not file his claim within the statutory period, the motion to dismissed should be denied without prejudice and he should be permitted to amend his Complaint to add facts that he believes will demonstrate that equitable tolling should apply to his claim.

### A. Continuing Violations Doctrine

"The continuing violations doctrine is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)).

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). Therefore, the continuing violation doctrine applies to a hostile work environment claim "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

In contrast, the continuing violations doctrine does not apply to discrete discriminatory acts, which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113; *see also Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 93 (3d Cir. 2012) (acknowledging that "the Supreme Court has explicitly rejected the use of th[e] [continuing violations] doctrine to preserve time barred claims for discrete discriminatory acts"). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110.

In *Morgan*, the Supreme Court provided "the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). "Like a termination or a failure to promote, the act of demotion is a discrete act . . . ." *Graham v. Hoffer*, No. CIV.A. 05-2679, 2006 WL 3831375, at *3 (M.D. Pa. Dec. 28, 2006). A failure to accommodate is also a discrete act for which the continuing violations doctrine does not apply. *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) ("A reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the

continuing violations theory."). A failure to accommodate occurs at the moment when an employer denies an employee's request for accommodation—that the employee continues to request the accommodation and the employer continues to deny it does not convert the claim into a continuing violation. *See id.*

Leonard argues that his failure to accommodate claim is not time barred because it is part of a continuing violation that "commenc[ed] with his underserved demotion and culminat[ed] with him self-catheterizing at work." Pl.'s Resp. 7. As previously discussed, the Court cannot consider any pattern of harassment that allegedly occurred after Leonard's demotion because Leonard failed to exhaust any harassment claim. Moreover, Leonard's demotion—the result of SEPTA's failure to accommodate him—is a separate and discrete discriminatory act to which the continuing violations doctrine does not apply. While Leonard continued to challenge his demotion and pay cut, these later actions did not convert SEPTA's discrete discriminatory act into a continuing violation. The continuing violations doctrine cannot save Leonard's time barred failure to accommodate claim.

### B. Lilly Ledbetter Fair Pay Act

The ADA incorporates the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), 42 U.S.C. § 2000e-5(e)(3)(A). *See* 42 U.S.C. § 12117 (providing that § 2000e-5 applies to the ADA). The FPA provides:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(3)(A).  "Thus, pursuant to the FPA, each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations."  *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010), *as amended* (Oct. 18, 2010).

Leonard argues that his failure to accommodate claim is timely because the FPA applies, meaning that every paycheck he receives at his reduced salary once again commences the administrative statute of limitations.  SEPTA counters that the FPA does not apply to his claim.

"[T]he FPA was enacted to address a particular type of employment discrimination, compensation decisions, which are often concealed and not discovered until long after the 180– or 300–day administrative period expires." *Id.* at 274.  Unlike compensation claims, discrete employment decisions like hirings, firings, and promotions are immediately apparent at the time they occur.  *Id.*  "Thus, the plain language of the FPA covers compensation decisions and not other discrete employment decisions."  *Id*.  "Had Congress intended the FPA to cover types of employment discrimination claims apart from pay discrimination claims, it would have done so explicitly."  *Id.*  "To maintain a pay disparity claim, a plaintiff must demonstrate that 'employees ... were paid differently for performing "equal work"—work of substantially equal skill, effort and responsibility, under similar working conditions.'"  *Id.* (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000)).

In *Noel*, the plaintiff argued that because his failure to promote claim had an impact on his compensation, his claim was based on a pay disparity and covered by the FPA.  *Id.* at 272.  The plaintiff alleged that he was unlawfully passed over for promotion and as a result he received a lower salary than his white co-workers who had been promoted.  *Id*.  In examining the plaintiff's failure to promote claim, the Third Circuit recognized that while "many employment-

related decisions, not simply pay-setting decisions, ultimately have some effect on compensation," that is insufficient to bring those "myriad employment decisions" within the ambit of the FPA. *Id.* at 275. The *Noel* court held that even though the plaintiff's failure to promote claim resulted in lower compensation "a failure-to-promote claim is not a discrimination-in-compensation charge within the meaning of the FPA." *Id.*

In *Davis v. Bombardier Transp. Holdings (USA) Inc.*, the Second Circuit addressed whether the FPA applied to a plaintiff's ADA demotion-based claim, which resulted in the plaintiff receiving a salary reduction of 75 cents per hour. 794 F.3d 266, 267-68 (2d Cir. 2015). The Second Circuit agreed with the Third Circuit's holding in *Noel* that the FPA does not apply to discrete employment decisions. *Id.* at 270. Although the demotion decision in *Davis* impacted the plaintiff's compensation, the Second Circuit held that the FPA did not apply because "the Ledbetter Act's reference to 'discrimination in compensation' was to traditional pay-discrimination claims rather than to a pay reduction that flows from another adverse employment action." *Id.* at 271; *see also Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1183 (10th Cir. 2011) (holding that the FPA does not apply to a demotion claim); *Zanaglio v. J.J. Kennedy, Inc.*, No. CV 17-874, 2017 WL 3492696, at *2 (W.D. Pa. Aug. 15, 2017) (same). The Second Circuit explained that the plaintiff could not "salvage her time-barred demotion claim by virtue of a concomitant pay reduction . . . because her claim is based on the theory that she was demoted and paid less when she was still able to perform higher-paying work. Her claim is not that she was paid less than employees engaged in the same work because she was disabled." *Id.*

Leonard alleges that SEPTA failed to accommodate him and instead demoted him from a first class mechanic to a third class mechanic, which resulted in a $2.50 per hour salary

reduction. Leonard argues that because his demotion impacted his salary it falls within the ambit of the FPA. Leonard, however, does not allege that he received less pay than similarly situated third class mechanics who are not disabled. Because he does not allege that he was denied equal pay for equal work, he has not raised a pay disparity claim. *See Davis*, 794 F.3d at 271; *Noel*, 622 F.3d at 272-74. Leonard alleges that he was subject to a discrete employment decision—a demotion—that happened to have an effect on his compensation. Because the FPA does not cover discrete employment decisions, the FPA cannot save Leonard's time barred failure to accommodate claim.

Because Leonard failed to file his EEOC charge within 300 days from his 2016 demotion, his failure to accommodate claim is untimely. Therefore, I will grant SEPTA's motion to dismiss Leonard's failure to accommodate claim.

### C. Equitable Tolling

In the alternative, Leonard argues that even if he did not file his failure to accommodate claim within the statutory period, equitable tolling should apply to enable him to proceed with his claim. Leonard implies that equitable tolling might apply because he timely asserted his rights mistakenly in the wrong forum when he filed an internal grievance and went through arbitration. Because Leonard has not included facts relevant to his equitable tolling argument in the Complaint, he requests that the Court grant SEPTA's motion to dismiss without prejudice so that he may amend his Complaint to include information about the grievance process that he followed. SEPTA argues that the Court should dismiss Leonard's Complaint with prejudice because any amendment would be futile as there are no circumstances under which equitable tolling would apply.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). While these equitable doctrines may be used to overcome an untimely filed charge, they "are to be applied sparingly." *Morgan*, 536 U.S. at 113.

Although SEPTA makes several convincing arguments why Leonard's failure to accommodate claim is not subject to equitable tolling, without allowing Leonard to plead additional facts in an amended complaint, it is difficult to definitively conclude that amendment would be futile. Therefore, I will grant SEPTA's motion to dismiss without prejudice and allow Leonard to file an amended complaint.

## IV. CONCLUSION

For the reasons set forth above, I will grant SEPTA's motion to dismiss without prejudice and I will give Leonard the opportunity to file an amended complaint.

    _s/ANITA B. BRODY, J._
    ANITA B. BRODY, J.

Copies **VIA ECF**